## PURCELL v. HICKMAN et al.

No. 3148.   Decided January 24, 1918.   (170 Pac. 784.)

ACTION—PLEADING—JOINING OF CAUSES OF ACTION. A complaint found-
ing recovery on damages for conspiracy of an apartment building
owner, his lessee and an agent, *held* not to join separate causes of
action, although it grouped fraudulent acts of each which might
have otherwise been grounds of a separate action, and stated facts
which would otherwise have been ground for rescission of an ex-
change of property with the lessee.

Appeal from District Court of Salt Lake County, Third
District; *Hon. Harold M. Stephens,* Judge.

Action by Marie Purcell against F. L. Hickman and others.

Judgment for defendants.   Plaintiff appeals.

REVERSED.

*Walter Perry Kirksey* and *Van Cott & Moreton* for appel-
lant.

*Wm. E. Rydalch, Geo. G. Armstrong* and *Dickson, Ellis &
Lucas* for respondents.

THURMAN, J.

The questions involved in this appeal are: (1) Are there
several causes of action improperly united? and (2) Are there
several causes of action not separately stated?   The com-
plaint, including the exhibits made a part thereof, is volu-
minous.   It covers 33 pages of the printed abstract, and con-
tains an unusual amount of verbiage and matter which may be
treated as surplusage and wholly disregarded.   It becomes
necessary, however, to state the substance of the material
allegations.   It alleges:

(1)   The corporate existence of the defendant corporation
and its ownership of the property known as the Keith Apart-
ments in Salt Lake City.

(2)   The leasing of said apartments on the 29th day of December, 1913, for a term of five years, which lease, by assignment, was finally succeeded to by the defendant F. L. Hickman.

(3)   The ownership of some real property by the plaintiff in Salt Lake City of the value of $6,600.

(4)   Plaintiff's acquaintance with the defendant George E. Evans, a real estate broker of Salt Lake City, and the fact that she had only a few other acquaintances in the city.

(5)   The proposal of defendant Hickman to exchange his lease of the Keith Apartments for plaintiff's land, and the promise of the defendant Evans to investigate the matter for her and report.

(6)   The indebtedness of the defendant Hickman to the defendant company on account of arrears in the payment of rent in the sum of $800.

(7)   A conspiracy entered into by all of the defendants on or about December, 1915, to cheat and defraud plaintiff out of her said land and induce her to become an assignee and lessee of the lease held by Hickman of the Keith Apartments for the remainder of the term of said lease.

(8)   The fact that by means of said conspiracy and by false statements and representations made by said defendants they did cheat and defraud plaintiff out of her said land and induced her to become an assignee and lessee of said Keith Apartments, and to purchase the goods and furniture thereof.

(9)   The false representations made by defendants in pursuance of said conspiracy are alleged to be, in substance, as follows: (a) That the Keith Apartments during Hickman's tenancy under the lease had yielded in profits from $350 to $400 per month, except during the month of October, when it had yielded $1,100 in profits, and that it would continue to yield from $350 to $400 per month in profits during the remainder of the term of the lease; (b) that the total expense including the rent reserved in the lease, of operating the apartments during Hickman's tenancy had not exceeded $600 per month, and would not exceed that sum during the remainder of the term; (c) that the apartments on said 26th

day of December, 1915, were, and for a long time prior thereto
had been, fully occupied by bona fide tenants, with the excep-
tion of four rooms in the basement which were then vacant;
(d) that every room in the apartments was completely fur-
nished to the minutest detail; (e) that the remainder of the
term of said lease was reasonably worth $6,600, and far in
excess of the value of plaintiff's land; (f) that it was neces-
sary for plaintiff to execute a warranty deed of her land to
the defendant Olive Hickman and place the same in escrow in
the hands of the defendant Evans together with an abstract
and muniments of title; (g) that it was necessary for plain-
tiff to sign her name as assignee to the proposed assignment to
Olive Hickman, and deliver that also to the defendant Evans.

(10)    It is then alleged in the complaint that all and each
of the said representations made by defendants were false and
untrue and known by said defendants to be so when made;
that said representations were material; that they were made
by defendants with the intention that plaintiff should believe
them and act upon them, and that except for said representa-
tions and acts of defendants, as set forth in the complaint,
plaintiff would not have agreed to convey her land or become
obligated as assignee or lessee of said premises for the
remainder of the term of said lease; that plaintiff believed
said representations and statements and relied upon them as
being true, and so believing and relying executed the convey-
ance of her said land to said defendant Olive Hickman and
signed her name as assignee to the proposed assignment of said
lease; that she delivered said deed, abstract and muniments
of title to her said land, together with said assignment of said
lease, signed by her, to the defendant George E. Evans on
the 27th day of December, 1915, upon the express terms and
conditions, which plaintiff, on information and belief, alleges
were fraudulently made, to wit: (a) The defendants were to
furnish and deliver to plaintiff a complete inventory of house-
hold goods and furniture of the said Keith Apartments, and
plaintiff should have time and opportunity to examine and
check the same; (b) books and papers showing the financial
status of the business were to be turned over to plaintiff to

give her an opportunity to examine the same and determine
the income and disbursements incident to the business during
the tenancy of the defendant Hickman; (c) that the plaintiff
should be given ample time to examine the rooms of the apart-
ments to ascertain whether they were occupied by bona fide
tenants as represented by the defendants; (d) that plaintiff
and the defendant Hickman were to examine the books to
determine the status of the rents paid in advance, and the
rents unpaid, and adjust the same if the exchange of their
said properties was consummated; (e) that plaintiff was to be
fully satisfied in every particular, and if satisfied, then to
notify said defendants, whereupon defendants were to execute
and deliver to her a bill of sale of all household goods and
furniture in the apartments clear of liens and indebtedness to-
gether with an assignment for the remainder of the term of
said lease, and that at the same time the said warranty deed
executed by her should be delivered to the defendant Olive
Hickman, otherwise the said deed should be returned to plain-
tiff, and her signature as assignee to said proposed assignment
of the lease should be canceled and held for naught.

(11)   It is then alleged that in pursuance of said con-
spiracy, and fraudulently and in violation of the conditions
precedent aforesaid, defendants delivered said warranty deed
to the defendant Olive Hickman immediately upon receipt
thereof by the defendant Evans, and immediately thereafter,
in pursuance of said conspiracy, obtained a loan of $1,500
from the Zion's Savings Bank & Trust Company, and executed
and delivered as security for said loan a mortgage upon plain-
tiff's said land, and caused said warranty deed and the mort-
gage to be recorded in the office of the county recorder of Salt
Lake County January 7, 1916; that defendants further, in
pursuance of said conspiracy, executed and delivered a mort-
gage upon said lands to the defendant Keith Realty Company
for $118.14, and also, in pursuance of said conspiracy, and in
violation of the conditions precedent, above mentioned, de-
livered to said defendant company the said assignment of
said lease with plaintiff's signature thereon.

(12)   That none of the conditions precedent upon which

plaintiff delivered her deed to defendant Evans in escrow were ever complied with; that on January 8, 1916, plaintiff notified defendants she would not exchange or convey her land for the consideration above named, and demanded from said defendants the return of her deed and the muniments of title, whereupon defendants fraudulently stated and represented to her that said papers were still in escrow, and would not be delivered to the defendant Olive Hickman, nor should her signature, as assignee, upon said proposed assignment, be delivered to the defendant company until all the conditions upon which they had been received had been fully complied with by the defendants. It is then alleged that the defendants had theretofore already delivered said deed to the defendant Olive Hickman with plaintiff's other muniments of title of said land, and had mortgaged the same, and had also delivered said proposed assignment of the lease, signed as aforesaid by plaintiff, to the defendant company without plaintiff's knowledge or consent, and in violation of the conditions precedent, heretofore mentioned.

(13)    That on the 12th day of January, 1916, defendant Hickman vacated said Keith Apartments, and on the 18th day of the same month gave plaintiff a pretended inventory and bill of sale of the goods and furniture belonging to said apartments, and also delivered to plaintiff the lease and assignment above referred to with a pretended written consent of the defendant Keith Realty Company.

(14)    Plaintiff then alleges that she took possession of the premises, goods, and furniture on January 18, 1916, and has ever since been in possession thereof; that the defendants wrongfully and fraudulently, in pursuance of their conspiracy, failed and neglected to deliver all the household goods and furniture listed in the inventory, and then sets out in detail the kind and quantity of said goods.

Plaintiff further alleges certain terms of the lease which impose duties and obligations upon the lessee and assignee, and further alleges that the remainder of the term of said lease, with the household goods and furniture, were, at the time she received them, and for a long time prior thereto, and

will continue to be in the future, of no value whatever, but an actual loss and liability to the assignee or lessee, all of which defendants knew on and prior to the said 26th day of December, 1915. Plaintiff then sets out in minute detail her care and diligence in operating said apartments, and her failure and loss in connection therewith, to wit, a deficit in the operation of said apartments, the expense thereof being greater than the returns to the extent of $806.12; loss of profits, $5,975; entire failure of consideration for her land, $6,600; loss by defendants' failure to deliver household goods and furniture, $228.33—total, $13,609.45, for which sum plaintiff prays damages.

The defendants F. L. Hickman, Olive N. Hickman, and George E. Evans filed a demurrer to the complaint, both special and general. The special demurrer is as follows:

"That said amended complaint is uncertain in this, to wit, that it cannot be ascertained therefrom whether plaintiff seeks to recover judgment against the defendants for damages on the grounds of fraud, misrepresentation, and conspiracy, or whether she seeks to rescind the contract set forth in said amended complaint. That several causes of action have been improperly united, in this, to wit: (a) There is an attempted alleged cause of action for fraud, misrepresentation and conspiracy in the alleged sale of goods, wares and merchandise from the defendants F. L. Hickman and his wife, Olive N. Hickman, to the plaintiff. (b) There is an attempted alleged cause of action for the failure of the defendants F. L. Hickman and Olive N. Hickman, his wife, to deliver to plaintiff certain goods, wares and merchandise of the value of $228.33. (c) There is an attempted alleged cause of action also set forth for the alleged conversion of a deed from plaintiff to Olive N. Hickman, in that defendant George E. Evans delivered a deed to Olive N. Hickman when he agreed to hold the same in escrow. (d) There is an attempt to set forth a cause of action for fraud and misrepresentation, and there is an attempt to set forth a cause of action for the rescission of the contracts set forth in said amended complaint."

Defendants also at the same time filed a motion requiring

the plaintiff to separate the several alleged causes of action referred to in the special demurrer. The general demurrer was overruled by the court, and the special demurrer and motion sustained, both as to the charge of uncertainty and the improper union of several causes of action. Plaintiff elected to stand upon her complaint, refused to amend, and judgment was entered dismissing the action. Plaintiff appeals, and assigns as error the order sustaining the demurrer, the judgment and order dismissing the action, and alleges that the same is contrary to law. The demurrer for uncertainty is expressly waived by respondents in their brief. The only questions, therefore, for determination are: (1) Are there several causes of action not separately stated? (2) Are there several causes of action improperly united? If the first question is answered in the negative, both questions will be disposed of.

The most casual examination and analysis of the complaint disclosed one fundamental idea which must not be overlooked. The complaint charges in terms unequivocal and without ambiguity that on the 26th day of December, 1915, defendants all conspired, connived, and confederated together with the express intent and purpose to cheat and defraud the plaintiff out of her land, and to induce her to become an assignee and lessee of the remainder of the term of the lease therein mentioned. It alleges with the most scrupulous care the existence of this conspiracy, confederation, and intent on the part of the defendants in connection with every alleged wrongful act committed by them, or either of them, and that the same was committed in pursuance of said conspiracy. So that in segregating the several alleged wrongs, whether alleged to have been committed by one or all of the defendants, it must be remembered they are alleged to have been committed in pursuance of the conspiracy and confederation, the ultimate purpose of which was to defraud and cheat the plaintiff out of her land, and induce her to become an assignee of the lease. Considering this proposition in the most minute detail, we find that whether it be the sale of the goods and furniture of Hickman and wife to plaintiff, or the failure of Hickman and

wife to deliver all the goods and furniture purchased by plaintiff, or the wrongful delivery of the escrow deed by Evans to Olive N. Hickman, or any fraud or act of any particular defendant, each and every such act or omission by any or all of the defendants was alleged to have been done or omitted in pursuance of the conspiracy and confederation charged in the complaint.

The matters specifically enumerated above are the matters on which the respondents rely as constituting the several causes of action. "Several causes of action are not united where but one object is alleged and various acts in pursuance of a conspiracy are set forth, though the acts are of different character, and were done at different times, and though some of them did not affect all the defendants and none of them benefited all the defendants to the same degree or extent." 5 Standard Ency. Prac. 331.

In *Jones* v. *Morrison,* 31 Minn. 140, 16 N. W. 854, the first paragraph of the syllabi reflects the opinion of the court on the point in question, and reads as follows:

"Where a complaint alleges a conspiracy to cheat and defraud plaintiff in respect to his interest as a stockholder in a corporation, all separate acts or transactions of defendants done pursuant to it may be joined in the complaint, although some of them do not affect all the defendants, and none of them affect any two of the defendants to the same extent or degree."

See, to the same effect, *Dewing* v. *Dewing,* 112 Minn. 316, 127 N. W. 1051; 8 Cyc. 676; 12 C. J. 632.

Furthermore, as reflecting the singleness of purpose on the part of all of the defendants in every act committed or omitted by them, or either of them, to deprive the plaintiff of her land and induce her to assume the obligations of lessee under the lease, the complaint discloses an adequate motive. Defendant Hickman was indebted to the defendant Keith Realty Company in the sum of $800 on account of arrears in the payment of rent. The obtaining of this property from plaintiff and immediately procuring a loan thereon would enable Hickman to liquidate this indebtedness, and the transfer of the remainder of the term of the lease to plaintiff would probably

secure for the defendant company a better and more reliable tenant, at least, one that was not in failing circumstances. Besides liquidating his indebtedness to the. defendant company Hickman would be several thousand dollars ahead, for the property he was giving in exchange is alleged to have been absolutely worthless at the time of the exchange. The withholding of a portion of the goods and furniture purchased by plaintiff is specifically alleged to have been done by all the defendants in pursuance of the conspiracy. As to the defendant Evans, who is a real estate broker, if the exchange was consummated, he. would undoubtedly obtain a commission at least. So that it is manifest on the face of the complaint that each and every one of the defendants were pecuniarily interested in effecting the objects which plaintiff alleges was the end and purpose of the conspiracy. The fact that the damages were segregated into incongruous items, some of which may be irrecoverable in this or any form of action, does not make the complaint obnoxious to the objections raised. The statement of the cause of action showing the grounds and reasons therefor is the determining factor. If this discloses but a single cause of action, that cause of action cannot be converted into more than one by a mere manipulation of the ad damnum clause. It is strenuously contended, however, by respondents, that the complaint alleges a cause of action for a rescission of the contract, and that that should have been separately stated.

Plaintiff had the right to elect whether to sue for a rescission of the contract or for damages. The facts necessary to be alleged in both remedies are substantially the. same, except that in the former the offer to return the property obtained in the transaction or otherwise place the defendants in statu quo should be alleged. In the present case the plaintiff elected to sue for damages. This she had the right to do. Phillips, Code Pl. section 448. The case of *Felt Townsite Co.* v. *Felt Investment Co.*, 50 Utah, 364, 167 Pac. 835, recently decided by this court, and relied upon by both appellant and respondents, was decided upon grounds entirely different from those appearing in the present case. In that case there was no charge of conspiracy and confederation to commit the wrongs

complained of. If there had been the opinion, in part at least, would have been different. In the present case if there was no charge of conspiracy the court would probably reach a different conclusion. The complaint states but one cause of action.

For the foregoing reasons the judgment must be reversed. The cause is therefore remanded to the district court of Salt Lake county, with directions to said court to reinstate the plaintiff's complaint, overrule the demurrer interposed thereto, permit defendants to file an answer to said complaint upon such terms as may be just, and proceed with the hearing of said case. Appellant to recover costs on appeal.

FRICK, C. J., and McCARTY, CORFMAN, and GIDEON, JJ., concur.